UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARVIN BROWN                                          CIVIL ACTION

VERSUS                                                NO.  09-6762

DOUGLAS BROOKS ET AL.                                 SECTION "C" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Marvin Brown, is a prisoner currently incarcerated in the Hunt Correctional Center in St. Gabriel, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Rayburn Correctional Center Officer Douglas Brooks, Warden Robert Tanner, Lt. Ronnie Seal and EMT Bruce Forbes.  In his written complaint, he alleged that he was sexually assaulted by defendant Officer Brooks during a strip search, that Lt. Seal failed to protect him from the assault and that he did not receive proper medical care for the injuries he suffered.  He seeks injunctive relief. Record Doc. No. 3 (Complaint ¶¶ IV and V).

On December 8, 2009, I conducted a telephone conference in this matter. Participating via telephone were plaintiff pro se; Phyllis Glazer and Michael Keller, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

# <u>THE RECORD</u>

Brown testified that he was then incarcerated at Rayburn[1] based upon a conviction for distribution of cocaine, simple burglary and simple kidnaping in 1993, for which he is serving a 13-year prison sentence, but he said he has also been convicted of several obscenity charges while incarcerated for which he is serving an additional nine years. He confirmed that he makes three kinds of claims in this case: (1) he was subjected to an unconstitutional body cavity search; (2) defendant Lt. Seal failed to protect him from the search, which was conducted by defendant Officer Brooks; and (3) he did not receive proper medical care for injuries he suffered in the search.

Brown stated that the body cavity search occurred on September 27, 2009 sometime in the morning between 9:00 a.m. and 1:00 p.m. He testified that the search occurred in Sleet Unit and he described it as a "shakedown" during which Officer Brooks was searching another inmate named "Quinn," who had just been locked up. Brown testified in lurid fashion that Officer Brooks "told the inmate to . . . take both of his hands and open up his butt cheeks, then take his hands and lift up his testicles . . . then he told him to take his same hand and stick it in his mouth and roll it around up under his

---

[1]On January 25, 2010, plaintiff advised the court of his new address at the Hunt Correctional Center in St. Gabriel, Louisiana. Record Doc. No. 16.

gums. . . . So me and another guy bust out laughing, and I said, 'aw, man, that's cold. . . . I would never do nothing like that there.'"

Brown testified that Officer Brooks then told Brown that he was next for a cell shakedown. He stated that, after Officer Brooks instructed him to come to the bars of his cell, Officer Brooks entered the cell, began to throw Brown's things around the cell and walked out. Brown stated that Officer Brooks ordered him to strip down, and he complied. He said Officer Brooks then ordered him to bend over, and when he bent over at the bars Officer Brooks "poked his hand through the bars real fast, and his fingers scratched the side of my anus, so at that time, I flashed out, I started cursing him, I started shaking the bars, hollering for Lt. Seal, everything."

Plaintiff testified that, when Lt. Seal came to the cell, he complained about what Officer Brooks had done, but Lt. Seal did not believe him. He said that Lt. Seal then took Brown out of his cell and other ranking officers were called to the scene when Brown objected to any further attempts by the officers to conduct a body cavity search during the shakedown.

Brown clarified that his complaint of an illegal body search was against Officer Brooks, not Lt. Seal, and that he does <u>not</u> allege that Lt. Seal conducted any sort of body cavity search against him. He specified that his claim against Lt. Seal was that Lt. Seal failed to protect him from the cavity search by Officer Brooks. Asked if Lt. Seal knew

that Officer Brooks was going to conduct a body cavity search, Brown said, "I don't think he even knew anything. I think Sgt. Brooks was . . . playing some . . . homosexual games with me." Brown complained that a lieutenant should be present any time an inmate's cell is shaken down. He said his cell was the only one being shaken down at that time, after another inmate had been brought into the unit. He said the new inmate was subjected to a cavity search before being issued his uniform to make sure he had no contraband when he was brought into the unit. Brown alleged that Officer Brooks harassed him after he and another inmate laughed and commented about what he had done to the new inmate and he told Officer Brooks, "there ain't no way you gonna make me do anything like that."

As to his medical care claim, Brown acknowledged that he received the medical records I previously ordered, Record Doc. Nos. 6 and 13, and confirmed their accuracy. He testified that he saw a nurse at the jail on September 27, 2009, after the incident. He said the nurse scheduled him to see a doctor, and he confirmed the reference in his medical records that he saw a doctor the following day. Brown testified that the doctor told him to bend over, and the doctor inserted his finger in his rectum. He alleged that the doctor never looked at the scratch and said he was checking only for internal bleeding or similar injuries. He said the doctor would not look at the scratch or document it. He

alleged that a captain was standing by during the examination and giving the doctor some sort of sign to cut the examination short.

Asked to describe the injuries he suffered in the body cavity search, he said, "A scratch. You know, it wasn't no search, your honor. At the same time, it was . . . a homosexual game that was being played." He said he suffered "a scratch on the outside of my anal area where he poked his finger . . . on the side." He said the scratch healed after about three or four days.

Brown said he named Warden Tanner as a defendant because he is the supervisor of the jail, but he conceded that the warden was not personally involved in the incident.

Asked if he filed a grievance concerning the incident, Brown testified that he had, that he received a first step response and that he appealed it to "headquarters" in Baton Rouge, but his allegations were dismissed.

Plaintiff's medical records from the Rayburn Correctional Center include a request for medical treatment dated September 27, 2009, which indicates that Brown was seen by a licensed practical nurse around 9:20 p.m. According to the records, Brown complained to the nurse that Officer Brooks had stuck his finger into plaintiff's anus around 2:30 p.m. that day. Brown reported that he was having no problems, except that he may have been scratched, as he had seen "a little blood" in the area. The nurse referred him to a doctor the next morning. Plaintiff was seen by a doctor on

September 28, 2009, who noted plaintiff's same complaint. Physical examination of Brown's buttocks and anus was within normal limits. The doctor saw "no evidence of any abuse; no bleeding etc." The doctor's impression was "normal exam," and no prescription was required. Record Doc. No. 13 (medical records).

During the <u>Spears</u> hearing, defendants' counsel advised that the defense was that defendants' actions satisfied constitutional standards and that the defense may be susceptible to summary judgment proceedings. After the hearing, pursuant to the court's order, defendants filed a motion for summary judgment and a supplemental memorandum concerning plaintiff's claims. Record Doc. Nos. 15, 17 and 20. Plaintiff received several extensions of time to file a written opposition as ordered by the court. Record Doc. Nos. 15, 19, 21 and 22. When he filed his written opposition, he relied on his sworn testimony during the December 8th hearing. Record Doc. No. 23. Brown's sworn testimony provided during the hearing and his other written submissions have been considered in opposition to the summary judgment motion and in connection with the screening procedure described below.

For the following reasons, **IT IS RECOMMENDED** that defendant's motion for summary judgment be GRANTED.

## ANALYSIS

### I.    STANDARDS OF REVIEW

#### (A)    28 U.S.C. § 1915A Screening

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

(B)     <u>Summary Judgment</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the

nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the action under governing law.  An issue is 'genuine' if the evidence is sufficient for a rational trier of fact to return a verdict for the nonmoving party."  Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994) (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."

Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

II.    BODY CAVITY SEARCH/EXCESSIVE FORCE

Brown was a convicted prisoner at the time of the incident of which he complains. Construed broadly, his allegations may constitute a claim that he was subjected to an unconstitutional body cavity search. Brown also testified, however, that Officer Brooks's actions were a form of intentional humiliation and harassment, perhaps constituting excessive force.

Defendants contend in their motion for summary judgment that the facts on which Brown bases this claim do not state a claim arising under the Fourth Amendment for an unreasonable search.[2] They rely on the portions of plaintiff's testimony and written submissions to this court, which included documents from his administrative remedy procedure filings at the jail, in which Brown characterized Officer Brooks's conduct as an inappropriate touching and/or sexual assault. Thus, defendants argue that plaintiff's claim arises solely under the Eighth Amendment.

Construing plaintiff's allegations broadly, it appears that he attempts to state claims both for excessive force under the Eighth Amendment and for an unreasonable search under the Fourth Amendment. Thus, I address both claims in this report and recommendation.

The Eighth Amendment prohibits the cruel and unusual punishment of convicted prisoners like Brown. The United States Supreme Court "has held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" Wilkins v. Gaddy, 130 S. Ct. 1175, 1176 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 4 (1992)).

---

[2]Defendants also argue that plaintiff failed to exhaust his administrative remedies. However, conceding that dismissal based on a failure to exhaust would be without prejudice, defendants ask the court to address plaintiff's claims on the merits and grant summary judgment in their favor.

In Wilkins, the Supreme Court recently confirmed that the standards it established in Hudson remain the law.

> The "core judicial inquiry," we held [in Hudson], was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7 . . . ; see also Whitley v. Albers, 475 U.S. 312, 319-321 . . . (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. . . ." Hudson, 503 U.S. at 9 . . . .
>
> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [Id.] at 7 . . . . "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid. (quoting Whitley, 475 U.S. at 321. . .). The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9 . . . . "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Ibid. . . . An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Ibid. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Id. at 1178. The Eighth Circuit Court of Appeals has stated that the Supreme Court in Wilkins "left open the possibility of dismissal where the injury conclusively shows that the force applied was not unconstitutional." Williams v. Jackson, 600 F.3d 1007, 1012 (10th Cir. 2010) (citing Wilkins, 130 S. Ct. at 1180) (emphasis added).

Wilkins confirmed that Hudson remains the touchstone for evaluating claims under the Eighth Amendment. Thus, the Fifth Circuit's prior cases that relied on Hudson continue to provide binding legal standards for this court.

In the context of sexual assault, the Fifth Circuit has recognized that "sexual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are offensive to human dignity." Copeland v. Nunan, 250 F.3d 743, 2001 WL 274738, at *2 (5th Cir. 2001) (quotation omitted) (citing Hudson, 503 U.S. at 9-10; Whitley, 475 U.S. at 327; Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000)). In Copeland, the Fifth Circuit held that an inmate can recover damages for such an assault

> only if [the officer's] conduct was "repugnant to the conscience of mankind." While violent sexual assaults involving more than de minimis force are actionable under the Eighth Amendment, isolated, unwanted touchings by prison employees, though "despicable and, if true, they may potentially be the basis of state tort actions . . . they do not involve a harm of federal constitutional proportions as defined by the Supreme Court."

Id. at *3 (quoting Hudson, 503 U.S.. at 10; Boddie v. Schneider, 105 F.3d 857, 860-61 (2d Cir. 1997)) (citing Schwenk, 204 F.3d at 1195, 1997).

Applying the foregoing standards and assuming for purposes of defendants' summary judgment motion that Brown's factual allegations are true, I find that Brown was not subjected to an unconstitutionally excessive use of force. It is clear from his own testimony that he was subjected to a minor, one-time use of minimal force by Officer

13

Brooks.  He testified that Officer Brooks ordered him to bend over and that, when he bent over at the bars, Officer Brooks "poked his hand through the bars real fast, and his fingers scratched the side of my anus."  Officer Brooks's conduct happened suddenly, was very brief and caused extremely minor physical injuries.  As the Supreme Court held in <u>Wilkins</u>, the "extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. . . .  The extent of injury may also provide some indication of the amount of force applied."  <u>Wilkins</u>, 130 S. Ct. at 1178.  Plaintiff's testimony reveals that the only injury he suffered was a small scratch, which healed without treatment in three to four days.  A doctor examined Brown the day after the incident and found no evidence of any abuse and no bleeding in plaintiff's buttocks and anus.  The doctor concluded that the examination was normal and recommended no treatment.

In these circumstances, the de minimis nature of plaintiff's physical injury, along with his testimony about the suddenness and very brief extent of Officer Brooks's contact with him, suggests that the force applied was also de minimis and not of constitutional magnitude.  <u>See</u> <u>Smith v. Givens</u>, No. 09-0448-CG-M, 2010 WL 1780409, at *7-8 (S.D. Ala. Apr. 8, 2010) (Milling, M.J.), <u>report & recommendation adopted</u>, 2010 WL 1780407 (S.D. Ala. Apr. 30, 2010) (Granade, J.) (Superficial abrasion, small scratch, hematoma and superficial laceration, which required no treatment and had no lasting effects, were

de minimis injuries that failed to support plaintiff's excessive force claim.); Johnson v. Hamill, No. 6:09cv248, 2010 WL 1189497, at *4-5 (E.D. Tex. Mar. 23, 2010) (Guthrie, M.J.) (citing Wilburn v. Shane, 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Wesson v. Oglesby, 910 F.2d 278, 281-82 (5th Cir. 1990)) (Although plaintiff complained of severe back pain after an alleged beating, a medical examination six hours later detected no objective symptoms of back problems and revealed only a small abrasion. "The Fifth Circuit has held that where the objective factors of an inmate's medical records show no evidence of any injuries consistent with the inmate's allegations, the Court may conclude that the allegations are implausible. . . . [Plaintiff's] general and conclusory allegations that he suffered an unspecified back injury, which alleged injury was not discernible to medical professionals, are not sufficient to show that he suffered anything more than a de minimis injury" that was inconsistent with the use of excessive force.); McDowell v. Wilkinson County Corr. Facility, No. 5:08cv279-DCB-MTP, 2008 WL 5169632, at *5 (S.D. Miss. Dec. 3, 2008) (Bramlette, J.) (citing Copeland, 2001 WL 274738, at *2) (Officer's "slapping" of inmate for talking disrespectfully to officer after inmate refused to comply with officer's order to strip during cell inspection "was applied in a good faith effort to restore discipline. However, even if the 'slap' was not applied in good faith, it was a de

minimis use of physical force, as Plaintiff did not report any lasting injury, and does not constitute an Eighth Amendment violation."); <u>McCullough v. Quarterman</u>, No. H-06-3974, 2008 WL 5061512, at *9 (S.D. Tex. Nov. 24, 2009) (Atlas, J.) (Inmate's slightly swollen face and four scratches, which were documented by medical examination immediately after the allegedly excessive use of force and for which no treatment was needed, were de minimis injuries insufficient to establish a constitutional violation).

Furthermore, Brown's testimony, accepted as true solely for purposes of the pending motion for summary judgment, fails to demonstrate that the use of force "was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline." <u>Wilkins</u>, 130 S. Ct. at 1180 (quotations omitted). Plaintiff testified that, after Officer Brooks had shaken down and searched another inmate, Officer Brooks told Brown that he was next. Officer Brooks then entered plaintiff's cell to conduct a second shakedown. Brown testified that Officer Brooks ordered Brown to strip, just as the officer had done with the previous inmate. Officer Brooks's touching of plaintiff's anal area, as described by plaintiff, was at most an unwise excess of zeal rather than applied maliciously and sadistically to cause harm.

Even if the touching was sexually motivated, as Brown alleges, such conduct, while despicable, must be characterized as constitutionally de minimis in this context. <u>Copeland</u>, 2001 WL 274738, at *3; <u>see</u> <u>Brown v. Sloan</u>, No. 1:09-cv-01066, 2010 WL

476720, at *2 (W.D. La. Feb. 10, 2010) (Drell, J.) (citing Copeland, 2001 WL 274738 at *3) (quoting Boddie, 105 F.3d at 861) (Plaintiff's claim that corrections officer fondled him while conducting a shakedown failed to state an Eighth Amendment claim when plaintiff did not allege any physical injury.  "This single incident is not severe enough to be objectively sufficiently serious or egregious to state a constitutional violation. . . . [S]uch conduct does 'not involve a harm of federal constitutional proportions as defined by" the Supreme Court.); accord McGill v. Corrections Corp., No. 08-CV-0923, 2009 WL 790363, at *5 (W.D. La. Mar. 25, 2009) (Drell, J.) (citing Copeland, 2001 WL 274738, at *2); Washington v. City of Shreveport, No. 03-2057, 2006 WL 1778756, at *5-6 (W.D. La. June 26, 2006) (Hicks, J.) (citing Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998); Boddie, 105 F.3d at 861; Copeland, 2001 WL 274738, at *2; Buckley v. Dallas County, No. 397-CV-1649BC, 2000 WL 502845, at *5 (N.D. Tex. Apr. 27, 2000)).

Plaintiff's written submissions and testimony, construed broadly, may also assert a claim of an unconstitutional body cavity search under the Fourth Amendment.  The Fifth Circuit has held that the Fourth Amendment provides the correct standard for evaluating inmate claims of unconstitutional body cavity searches.  Moore v. Carwell, 168 F.3d 234, 237 (5th Cir. 1999) (citing Elliott v. Lynn, 38 F.3d 188, 191 n.3 (5th Cir. 1994); United States v. Lilly, 576 F.2d 1240 (5th Cir . 1978)).

"A state offender's Fourth Amendment protections are greatly limited in [the] context of prison situations. 'A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs.'" Tuft v. Chaney, No. H-06-2529, 2010 WL 420003, at *7 (S.D. Tex. Jan. 29, 2010) (Miller, J.) (quoting Moore, 168 F.3d at 236-37).

> It is well-settled that a strip search or visual body cavity . . . search of a prison inmate, which includes the exposure of body cavities for visual inspection, is not per se unreasonable under the Fourth Amendment. Nor must the search be predicated upon probable cause. Rather, the Fourth Amendment requires only that searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. As articulated in this context by the United States Supreme Court in Bell v. Wolfish, . . . :
>
>> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
>
> . . . . The Fifth Circuit has interpreted this statement of reasonableness as striking a balance in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.

Graves v. Cain, No. 09-0705-JJB-CN, 2010 WL 2134308, at *4-5 (M.D. La. Apr. 16, 2010) (Noland, M.J.), report & recommendation adopted, 2010 WL 2243274 (M.D. La. May 26, 2010) (Brady, J.) (footnote omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 559

(1979)) (citing <u>Hutchins v. McDaniels</u>, 512 F.3d 193 (5th Cir. 2007); <u>Elliott</u>, 38 F.3d at 193; <u>Watt v. City of Richardson Police Dept.</u>, 849 F.2d 195, 196 (5th Cir. 1988); <u>Hay v. Waldron</u>, 834 F.2d 481, 485 (5th Cir. 1987); <u>Thorne v. Jones</u>, 765 F.2d 1276 (5th Cir. 1985); <u>United States v. Lilly</u>, 576 F.2d 1240 (5th Cir . 1978)) (additional quotations omitted). Under the Fifth Circuit's standards, a prison official's burden of proving the reasonableness of a strip search "is a light burden because an administrator's decisions and actions in the prison or jail context are entitled to great deference." <u>Tuft</u>, 2010 WL 420003, at *7 (citing <u>Elliott</u>, 38 F.3d at 191).

In the instant case, Brown testified that Officer Brooks told him that he was next in line for a shakedown, after the officer had already shaken down and searched another, newly incarcerated inmate. Officer Brooks entered plaintiff's cell to conduct the shakedown and then ordered Brown to strip, just as he had done with the previous inmate. Plaintiff speculated that Officer Brooks targeted him for a strip search and shakedown after he laughed at the previous inmate's search. However, plaintiff's own testimony is that Officer Brooks merely told Brown that he was next for a cell shakedown. In similar cases of either random or targeted visual body cavity searches, which serve the legitimate penological needs of preserving order, discipline, security and safety, the courts have held that prisoners failed to assert any constitutional violation. <u>Brown v. Blaine</u>, 185 Fed. Appx. 166, 2006 WL 1716772, at *3 (3d Cir. 2006);

19

Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997); Elliott, 38 F.3d at 193; Covino v. Patrissi, 967 F.2d 73, 80 (2d Cir. 1992); Tyson v. Tanner, No. 08-4599, 2009 WL 2883056, at *3-4 (E.D. La. Aug. 25, 2009) (Berrigan, J.); Calhoun v. Botos, No. 08-10051, 2009 WL 612348, at *10 (E.D. Mich. Mar. 6, 2009) (O'Meara, J.).

In short, the actions of Officer Brooks, as described by plaintiff, do not rise to the level of a constitutional violation, and no cognizable Section 1983 claim arises from these facts. While Officer Brooks's actions may constitute the state law intentional tort of battery, which Brown is free to pursue in state court, they were not so malicious, wanton or unreasonable as to constitute a civil rights violation actionable under federal law.

III.  FAILURE TO PROTECT

Brown alleges that defendants failed to protect him from harm. Specifically, he alleges that Lt. Seal failed to protect him from a sexual assault by Officer Brooks.

Brown was a convicted inmate at the time of the events on which he bases his claims, so that the Eighth Amendment standard applies. Under the Eighth Amendment, prison officials have a duty to protect inmates from harm and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from

harm, including sexual assault, inflicted by another officer.  <u>Morris v. Trevino</u>, 301 Fed. Appx. 310, 2008 WL 4996599, at *1 (5th Cir. 2008); <u>Payne v. Parnell</u>, 246 Fed. Appx. 884, 2007 WL 2537839, at *5 (5th Cir. 2007); <u>Williams v. Humphrey</u>, No. 09-cv-202-bbc, 2009 WL 1444160, at *3 (W.D. Wis. May 20, 2009); <u>McCullough</u>, 2008 WL 5061512, at *12.  Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm.  <u>Farmer</u>, 511 U.S. at 834; <u>Newton v. Black</u>, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976); <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer</u>, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  <u>Id.</u> at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact.  Farmer, 511 U.S. at 837; Newton, 133 F.3d at 308.

> [If a] plaintiff presents evidence showing that a substantial risk of . . . attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43. Thus, in Adames v. Perez, 331 F.3d 508 (5th Cir. 2003), the United States Court of Appeals for the Fifth Circuit vacated and remanded a jury verdict in favor of an inmate, holding that evidence of isolated previous attacks was insufficient to show deliberate indifference to an inmate's safety or to support a jury's verdict that prison officials failed to protect the inmate.

In this case, it cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm because his own testimony confirms that neither prison officials nor Brown himself had any reason to believe or even suspect that Officer Brooks posed any danger to Brown under these particular circumstances. The record reveals no history known to defendants of any prior incidents between Brown and Officer Brooks. The alleged assault by Officer Brooks occurred suddenly and without warning, and lasted only a few seconds. Prison officials had no reason to suspect that Officer Brooks posed any known or anticipated threat to plaintiff before the alleged assault, just as Brown himself had no reason to believe that Officer Brooks posed any threat to him. See Williams, 2009 WL 1444160, at *1, *4, *5 (Because inmate failed

to show that defendant prison official knew about alleged sexual assault against plaintiff by a prison guard, he failed to state a claim against defendant for failure to protect him from the assault.).

Plaintiff's testimony in this regard, even if accepted as true in its entirety for present purposes, does not rise to the level of deliberate indifference to a known risk of substantial harm required to establish a constitutional violation. He testified that Officer Brooks ordered him to bend over after he had stripped and that, when he bent over at the bars, Officer Brooks "poked his hand through the bars real fast, and his fingers scratched the side of my anus." Brown stated that he then "started shaking the bars, hollering for Lt. Seal, everything," and that Lt. Seal came to his cell. However, he also testified that Lt. Seal did not know in advance that Officer Brooks was going to conduct a body cavity search or was going to "play[ ] some . . . homosexual games with me."

Thus, plaintiff's own testimony confirms that Lt. Seal and other prison officials had no prior knowledge or suspicion that Officer Brooks would assault plaintiff. Under these circumstances, it cannot be said that defendants knew of and disregarded an excessive risk to Brown's health or safety. Morris, 2008 WL 4996599, at *1; Payne, 2007 WL 2537839, at *5; McCullough, 2008 WL 5061512, at *12.

Therefore, prison officials cannot be liable for failing to protect plaintiff because no finding of deliberate indifference required to state a constitutional claim is possible.

Accordingly, plaintiff's Section 1983 claim of failure to protect from harm must be dismissed.

IV.     MEDICAL CARE

Brown was a convicted prisoner at all relevant times about which he complains. In Estelle, 429 U.S. at 104, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. The same standards concerning deliberate indifference discussed above also apply to this claim.

Thus, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

An inmate must satisfy the same objective and subjective requirements described above to demonstrate that a prison official has violated the Eighth Amendment with regard to plaintiff's medical care. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot

be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace, 333 F.3d at 626.

In this case, Brown's allegations negate any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the conditions he described, consisting solely of a scratch that healed by itself in three to four days, presented a serious medical need that posed a substantial risk of harm during Brown's incarceration at the jail. This complaint does not rise to the level of a serious medical need for purposes of constitutional analysis. See Lockett v. Suardini, 526 F.3d 866, 877 (6th Cir. 2008) ("minor lacerations and cuts" and soreness in two fingers, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs); Vaughn v. City of Lebanon, 18 Fed. Appx. 252, 2001 WL 966279, at *20 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); Dawes v. Coughlin, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998) (small laceration not a serious medical need); Davis v. Jones, 936 F.2d 971, 972-73 (7th Cir.

1991) (one-inch laceration not serious medical need); <u>Benitez v. Locastro</u>, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan. 29, 2010) (bruises and a laceration not serious medical conditions); <u>Willacy v. County of Brevard</u>, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need).

Even assuming, however, for present purposes that plaintiff's medical problem, consisting of a scratch, was serious, Brown has alleged facts, confirmed by his testimony and his medical records, that negate any conceivable inference of deliberate indifference by jail officials. During his testimony, plaintiff stated that he had reviewed all of his medical records and that they were accurate. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention for the condition about which he complains while incarcerated in the jail. He saw medical care providers at the jail for this condition on two occasions, on the evening of the incident, when he reported it to the nurse, and the next day, when he was examined by the doctor, who found no signs of abuse or bleeding and recommended no treatment. Brown testified that the scratch healed in three to four

days, and the record is devoid of any indication that he sought or needed any further treatment.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's condition. While it is clear from his allegations and testimony that he is not satisfied with the effectiveness of his medical care, it is equally clear that the medical care provided was constitutionally adequate. Certainly, no finding of deliberate indifference to serious medical needs can be made based on this record, which includes two visits with medical personnel and a physical examination that revealed no injuries or abnormalities. See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own .); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when first plaintiff's injury was not severe enough to warrant medical attention and healed on its own in a few days, and when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries,

including a tetanus shot, an ice pack and a pain medication prescription.); <u>Valenzuela v. Smith</u>, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), <u>report & recommendation adopted</u>, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), <u>aff'd</u>, 249 Fed. Appx. 528, 2007 WL 2827547 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Contentions like Brown's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); <u>see id.</u> (active treatment of prisoner's serious medical condition that ultimately resulted in death does <u>not</u> constitute the requisite deliberate indifference, even if treatment was negligently administered); <u>see also</u> <u>Estelle</u>, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."); <u>Corte v. Schaffer</u>, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994)) (Contrary to plaintiff's

allegation that he had received "no treatment" because he believed he needed a referral to a gastroenterologist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel more than 100 times and received numerous gastrointestinal tests and a chest x-ray, with all results being within a normal range.); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (Prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991) (Plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip.").

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983.

V.    <u>IMPROPER DEFENDANT</u>

Brown makes no claim that named defendant Warden Tanner was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996). Thus, this defendant cannot be held liable under Section 1983

pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983). To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Sanders, 950 F.2d at 1159-60 (5th Cir. 1992). In the instant action, plaintiff has failed to establish either of these two criteria. Thus, Brown can assert no claim against Warden Tanner under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___17th___ day of June, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.